http://www.va.gov/vetapp16/Files4/1634330.txt

Citation Nr: 1634330 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 10-07 649 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana

THE ISSUE

Entitlement to a disability rating in excess of 10 percent prior to October 1, 2009, in excess of 40 percent from October 1, 2009 to November 14, 2011, in excess of 10 percent from November 15, 2011 to August 3, 2014, and in excess of 40 percent on and after August 4, 2014 for chronic lumbar strain.

REPRESENTATION

Veteran represented by: Larry Stokes, Agent

ATTORNEY FOR THE BOARD

K.C. Spragins, Associate Counsel

INTRODUCTION

The Veteran had different periods of duty in the United States Army Reserves from May 1976 to January 2002.

This matter initially came to the Board of Veterans' Appeals (Board) on appeal from an October 2007 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in New Orleans, Louisiana that continued a 10 percent rating. The various staged ratings cited in the issue were ultimately assigned by a subsequent rating.

During the pendency of the appeal, a July 2012 rating decision assigned separate ratings for radiculopathy of the right and left lower extremities. The Veteran then filed a notice of disagreement with the assigned ratings in January 2013, and the RO later addressed these issues in a September 2014 statement of the case. However, the Veteran did not submit a VA Form 9 for these issues. As such, these matters are not currently before the Board.

In a February 2015 decision, the Board remanded the case to the Agency of Original Jurisdiction (AOJ) for additional development and adjudication. The case has since been returned to the Board for appellate review.

This appeal was processed using the Virtual VA paperless claims processing system and the Veterans Benefits Management System (VBMS). Accordingly, any future consideration of this case should take into consideration the existence of these records.

FINDINGS OF FACT

1. Prior to March 2, 2007, the Veteran's chronic lumbar strain was manifested by painful motion; but not forward flexion of 60 degrees or less, a combined range of motion of 120 degrees or less, muscle spasm or guarding severe enough to result in an abnormal gait or spinal contour, x-ray evidence of arthritis involving two or more major joints or two or more minor joints with occasional incapacitating exacerbations, or intervertebral disc syndrome with incapacitating episodes.

2. From March 2, 2007 to August 21, 2009, the Veteran's chronic lumbar strain was manifested by forward flexion greater than 30 degrees, but not greater than 60 degrees; without favorable or unfavorable ankylosis of the entire thoracolumbar spine, or intervertebral disc syndrome with incapacitating episodes.

3. From August 22, 2009 to September 30, 2009, the Veteran's chronic lumbar strain manifested was manifested by forward flexion of 30 degrees or less, but not unfavorable ankylosis of the entire thoracolumbar spine, or intervertebral disc syndrome with incapacitating episodes.

4. From October 1, 2009 to November 14, 2011, the Veteran's chronic lumbar strain manifested was manifested by forward flexion of 30 degrees or less, but not unfavorable ankylosis of the entire thoracolumbar spine, or intervertebral disc syndrome with incapacitating episodes.

5. From November 15, 2011 to August 3, 2014, the Veteran's chronic lumbar strain was manifested by painful motion; but not forward flexion of 60 degrees or less, a combined range of motion of 120 degrees or less, muscle spasm or guarding severe enough to result in an abnormal gait or spinal contour, x-ray evidence of arthritis involving two or more major joints or two or more minor joints with occasional incapacitating exacerbations, or intervertebral disc syndrome with incapacitating episodes.

6. On and after August 4, 2014, the Veteran's chronic lumbar strain was manifested by forward flexion of 30 degrees or less, but not unfavorable ankylosis of the entire thoracolumbar spine, or intervertebral disc syndrome with incapacitating episodes.

CONCLUSIONS OF LAW

1. Prior to March 2, 2007, the criteria for a disability rating in excess of 10 percent for chronic lumbar strain have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015).

2. From March 2, 2007 to August 21, 2009, the criteria for a 20 percent disability rating, but no higher, for chronic lumbar strain have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015).

3. From August 22, 2009 to September 30, 2009, the criteria for a 40 percent disability rating, but no higher for chronic lumbar strain have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015).

4. From October 1, 2009 to November 14, 2011, the criteria for a disability rating in excess of 40 percent have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015).

5. From November 15, 2011 to August 3, 2014, the criteria for a disability rating in excess of 10 percent have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015).

6. On and after August 4, 2014, the criteria for a disability rating in excess of 40 percent have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 as amended (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

VA is required to notify the claimant and her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). As part of this duty, the Veteran should be advised of the elements of a disability rating and an effective date. Dingess v. Nicholson, 19 Vet. App. 473, 486 (2006); aff'd sub nom., Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007). The duty to notify in this case was satisfied by a letter sent to the Veteran dated in July 2007. This letter was also provided prior to the initial decision on the claim by the AOJ in October 2007. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Accordingly, the Board finds that VA's duty to notify the Veteran is satisfied.

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate her claim. 38 U.S.C.A. § 5103A; 38 C.F.R. 3.159(c), (d). This duty to assist contemplates that VA will help a claimant obtain records relevant to her claim, whether or not the records are in Federal custody, and that the VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (c)(4).

In this case, the AOJ obtained the Veteran's service treatment records and all identified and available post-service treatment records. The Veteran also received VA examinations in connection with her claim in March 2006, March 2007, August 2009, November 2011, and August 2014. 

The Board finds that the August 2014 VA examination is adequate for rating purposes as it fully addresses the rating criteria and evidence of record that are relevant for rating the Veteran's lumbar spine disability. As such, the Board finds that this examination, along with the other evidence of record, is adequate to make a determination on the Veteran's increased rating claim for chronic lumbar strain. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

The February 2015 remand instructed the AOJ to send the Veteran a letter requesting that she identify any outstanding private or VA treatment records and provide any necessary authorization. The Veteran was sent letters that requested this information in November 2015 and January 2016. However, the Veteran did not respond to these requests. In addition, the Board requested that VA treatment records dated from June 2009 through March 2011 and June 2012 be obtained and added to the claims file. A review of the record shows that the AOJ followed this directive. The remand also specified that updated VA treatment records should be obtained, and the record reflects that additional VA treatment records were associated with the claims file in compliance with this instruction.

The Board additionally stated that the RO should complete any additional development that was necessary, including obtaining a contemporaneous VA examination. However, the record does not show that there has been a material change in the severity of the Veteran's lumbar spine disability since she was last examined in August 2014. The record does not contain an allegation or evidence revealing any worsening of the lumbar spine that time. The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. VAOPGCPREC 11-95. As such, the Board finds that there is adequate medical evidence of record to make a determination on the claim. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).
 
Accordingly, the Board finds that the AOJ has substantially complied with the instructions of the prior remand. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (concluding that a remand is not required under Stegall v. West, 11 Vet. App. 268 (1998), where there was substantial compliance with the Board's remand instructions).
In light of the foregoing, the Board finds that VA's duties to notify and assist have been satisfied, and, thus, appellate review may proceed without prejudice to the Veteran.

II. Laws and Regulations

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (rating schedule), found in 38 C.F.R. Part 4. Disability ratings are intended to compensate impairment in earning capacity due to a service connected disorder. 38 U.S.C.A. § 1155.

The evaluation of a service-connected disorder requires a review of a veteran's entire medical history regarding that disorder. 38 U.S.C.A. § 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589 (1991). When a reasonable doubt arises regarding the degree of disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

When, as here, the Veteran is requesting a higher rating for an already established service-connected disability, the present disability level is the primary concern and past medical reports do not take precedence over current findings. See Francisco v. Brown, 7 Vet. App. 55 (1994). However, "staged" ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505, 509 (2007) ("The relevant temporal focus for adjudicating an increased-rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim."). The Board notes that the Veteran's increased rating claim was received on December 19, 2006. Therefore, the period for consideration on appeal began on December 19, 2005, one year prior to the date of receipt of her increased rating claim. 38 C.F.R. § 3.400(o)(2) (2014).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage and the functional loss with respect to all of these elements. In evaluating disabilities of the musculoskeletal system, it is necessary to consider, along with the schedular criteria, functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995). The functional loss may be due to the absence of part, or all, of the necessary bones, joints, and muscles, or associated innervation, or other pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. 

Pain on movement, swelling, deformity, or atrophy of disuse as well as instability of station, disturbance of locomotion, interference with sitting, standing, and weight bearing are relevant considerations for determination of joint disabilities. 38 C.F.R. § 4.45. Painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimal compensable rating for the joint. 38 C.F.R. § 4.59.

The Veteran's service-connected chronic lumbar strain is rated under Diagnostic Code 5237. See 38 C.F.R. § 4.71a (2015). Disabilities of the spine are evaluated under the General Rating Formula for Diseases and Injuries of the Spine. Under the General Rating Formula, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease, a 20 percent evaluation is warranted when there is forward flexion of the thoracolumbar spine greater than 30 degrees, but not greater than 60 degrees; the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent evaluation is warranted when there is forward flexion of the thoracolumbar spine of 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent evaluation is warranted for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent evaluation is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine.

Any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately, under an appropriate diagnostic code. 38 C.F.R. § 4.71a, General Rating Formula, Note (1).

For VA compensation purposes, normal range of motion for the thoracolumbar spine is 90 degrees of forward flexion, 30 degrees of extension, 30 degrees of left and right lateral flexion, and 30 degrees of left and right lateral rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees, consisting of the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right lateral rotation. 38 C.F.R. § 4.71a, General Rating Formal, Note (2) and Plate V.

Moreover, for VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurological symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees always represents favorable ankylosis). See 38 C.F.R. § 4.71a, General Rating Formula, Note (5).

Under Diagnostic Code 5003, degenerative arthritis established by x-ray findings is rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, Diagnostic Code 5003. Diagnostic Code 5003 provides that when limitation of motion due to arthritis is noncompensable under the appropriate diagnostic code, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, x-ray evidence of arthritis involving two or more major joints or two or minor joint groups, will warrant a rating of 10 percent; x-ray evidence of arthritis involving two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations, will warrant a 20 percent rating. For the purpose of rating a disability from arthritis, the lumbar vertebrae are considered a group of minor joints, ratable on parity with major joints. 38 C.F.R. § 4.45(f).

Under Diagnostic Code 5243, intervertebral disc syndrome may be rated under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation. A 40 percent evaluation is warranted for incapacitating episodes having a total duration of at least 4 weeks, but less than 6 weeks during the past 12 months. A 60 percent evaluation is warranted for incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 38 C.F.R. § 4.71a.

An incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, Note (1). If intervertebral disc syndrome is present in more than one spinal segment, provided that the effects in each spinal segment are clearly distinct, evaluate each segment on the basis of chronic orthopedic and neurologic manifestations or incapacitating episodes, whichever method results in a higher evaluation of that segment. Id., Note (2).

Chronic Lumbar Strain from December 19, 2005 to September 30, 2009

On December 19, 2005, a physical therapy note from the Clark Medical Group indicated that the Veteran's primary pain diagnosis was for unspecified disorders of the back. The record documented that she received treatment that included electrical stimulation for pain management, soft tissue mobilization/myofascial release, and a vasopneumatic device for edema/circulatory influence. Later this month, a VA treatment record noted the Veteran's report of back pain that was a 10 out of 10 in severity. The record stated that she had chronic back problems, right leg numbness, and neuropathy. The Veteran's past attempts to treat her symptoms with nonsteroidal anti-inflammatory drugs and tramadol had led to stomach irritation. The assessment was chronic back pain. 

In January 2006, a Clark Medical Group record stated that the Veteran reported having low back tension. The lumbar spine also had pain to palpation. Records from this month indicated that the Veteran was continuing to receive the same treatments noted in December 2005. By February 2006, a VA treatment record stated that the Veteran had occasional urinary incontinence. It was noted in the assessment that she had a cystocele.

The Veteran's lumbar spine disability was later evaluated during a March 2006 VA examination. The examiner discussed the Veteran's symptoms, stating that she had constant pain that traveled to the back, shoulders, and neck. The pain was described as crushing and aching, and the Veteran rated it as a 10 out of 10. Physical activity and stress could precipitate the pain. She also experienced stiffness that could result from activities such as prolonged sitting, walking, as well as transitioning from a seated to a standing position and vice versa. The Veteran reportedly was unable to exercise, bend, or walk for long periods. She obtained pain relief with the use of acetaminophen medication and heat treatments. The Veteran also received physical therapy 3 to 4 times a week. She reported that her disability did not cause incapacitation. 

Range of motion testing showed that the Veteran had 90 degrees of flexion, 30 degrees of extension, 15 degrees of right lateral flexion, 25 degrees of left lateral flexion, 30 degrees of right rotation, and 30 degrees of left rotation. The Veteran's pain occurred at 80 degrees of flexion, 20 degrees of extension, 10 degrees of right lateral flexion, 15 degrees of left lateral flexion, 20 degrees of right rotation, and 20 degrees of left rotation. After repetitive use, the joint function of the spine was additionally limited by symptoms of pain, fatigue, weakness, and lack of endurance. However, these symptoms did not cause additional loss in range of motion. 

The bilateral lower extremity reflexes showed a knee jerk of 2+ (normal) and an ankle jerk of 1+ (hypoactive). The examiner stated that the motor and sensory functions of the lower extremities were within normal limits. An associated March 2006 lumbar spine x-ray revealed degenerative arthritis, joint narrowing, and joint irregularity. The physical examination revealed that the Veteran's posture was normal, but her gait was slow and shuffling. However, she did not require an assistive device for ambulation. The Veteran had symmetry of spinal motion with normal curvatures of the spine. In addition, there was no muscle spasm, tenderness, or complaints of radiating pain on movement. The straight leg raising test was negative bilaterally. Furthermore, no ankylosis was present. There also were no signs of intervertebral disc syndrome with chronic and permanent nerve root involvement. The examiner noted that the Veteran had a diagnosis of lumbar strain with radiculopathy. As a result of the examination, the diagnosis was changed to spondylolisthesis at L4-5 and degenerative disc disease at L5 of the lumbar spine.

Following this examination, a December 2006 VA treatment reported that the Veteran had a chronic low back disorder with sciatica, grade I spondylolisthesis and moderate spinal stenosis on MRI. According to the record, the Veteran's low back pain radiated to her right lower extremity. The assessment was low back pain with lumbar radiculopathy. In February 2007, a Touro Infirmary record noted the Veteran's complaints of back pain. There was muscle tenderness in the low back without bony tenderness. No costovertebral angle tenderness was present. The straight leg raise test was still negative. The record reported that the Veteran's extremities had normal motor functioning and the lower extremities had normal reflexes. Her gait continued to be normal. In this record, she denied having fecal or urinary incontinence. Under the assessment, a backache was noted.

In March 2, 2007, another VA examination related to the Veteran's lumbar spine disability was conducted. The examiner stated that the Veteran was unable to sit or stand for too long. Pain in her legs could also render her unable to walk. Although she had a fair response to treatment with medication, the Veteran experienced drowsiness as a side effect. She was additionally limited to walking 1/4 of a mile, but she still did not use any assistive devices. The Veteran's other symptoms included fatigue, decreased motion, stiffness, weakness, spasms, and low back pain. The pain occurred constantly; it was shooting and burning in nature; it was moderate in its intensity, and it radiated down her legs. However, the Veteran did not have flare ups of her lumbar spine disability. There was no history of hospitalization or surgery, trauma to the spine, or neoplasm. 

During range of motion testing, the Veteran had 45 degrees of flexion, 10 degrees of extension, 20 degrees of right lateral flexion, 15 degrees of left lateral flexion, 25 degrees of right lateral rotation, and 20 degrees of left lateral rotation for both active and passive range motion. The Veteran also had pain that began at these endpoints for each measurement on passive and active range of motion. There was no additional loss in range of motion on repetitive use.

In addition, the sensory examination reflected normal results (2 out of 2) for the bilateral lower extremities. The Veteran's reflexes were also normal (2+) for the bilateral knees and ankles. The bilateral plantar flexion was similarly found to be normal. Muscle strength testing was determined to be a 5 out of 5 for the hip flexion, hip extension, knee extension, ankle dorsiflexion, ankle plantar flexion, and great toe extension. The muscle tone was also normal with no atrophy, including the left or right thoracic sacrospinalis. However, guarding, pain with motion, and tenderness were present bilaterally. Weakness was only noted on the left. These symptoms were not severe enough to be responsible for an abnormal gait or abnormal spinal contour. 

Upon inspection of the spine, there was symmetry in its appearance and the posture, head position, and gait type were normal. No abnormal spinal curvatures were found. There was still no ankylosis, and the Lasegue's sign was negative. The impression from a March 2007 lumbar spine x-ray associated with the examination stated that there was Grade 1 spondylolisthesis of the L4 over the L5. Mild degenerative changes were also present.

The examiner documented that that the Veteran had a history of urinary incontinence and urinary urgency. She experienced nocturia with 2 voidings per night. There was no urinary retention requiring cathertization. In addition, the Veteran had fecal incontinence with mild fecal leakage. However, pads were not required. She did not have symptoms of numbness, paresthesias, leg or foot weakness, falls, unsteadiness, visual dysfunction, or dizziness. In response to the examination report's prompt as to whether the etiology of these symptoms was unrelated to the claimed disability; the examiner answered "No."

The examiner opined that the lumbar spine disability had significant effects on the Veteran's occupational activities as a result of decreased manual dexterity, problems with lifting and carrying, lack of stamina, weakness or fatigue, decreased strength, and pain. In terms of daily activities such as chores, shopping, exercise, sports, and recreation, the impact of the disability was severe. It had a moderate impact on traveling, bathing, and dressing. Toileting and grooming were mildly affected, while feeding was not impacted.

In April 2007, the Veteran reported in a VA treatment record that she was taken to the local emergency room for low back pain that radiated to both of her lower extremities. Later this month, a VA treatment record stated that the Veteran had chronic low back pain and imaging consistent with moderate central stenosis and Grade I spondylolisthesis at L4-5, as well as bilateral neuroforaminal stenosis at L4-5 and L5-S1. The Veteran's back pain ranged from an 8 to 9 out of 10 with occasional radiation to the posterolateral thighs and lateral calves. She had a normal and nonantalgic gait. Her straight leg raising test was positive bilaterally. The assessment was lumbar spondylosis, Grade I spondylolisthesis, and likely L4 lumbar radiculitis.

According to a VA treatment record, the Veteran continued to have normal strength in all muscle groups of the lower extremities in May 2007. The sensation was intact to light touch in the L2 through S1 bilaterally. The clonus/Babinski sign was negative bilaterally. Regarding the lumbar spine, the Veteran experienced pain on bending and extension, right lumbar axial loading, had a positive lower and mid-lumbar spring test, and palpation tenderness in the right lower lumbar paraspinous. The straight leg raising test, Faber test, and sacroiliac compression pain test were negative. The impression was low back pain from multiple sources. Another record from this month reported that the Veteran's back pain was 5 out of 10 with the use of medication and 8 out of 10 without medication. The Veteran also received an epidural steroid injection in the lower lumbar spine for her back pain in May 2007, and she was noted to have good results in June 2007. At that time, there was no bowel or bladder dysfunction.

In June 2007, the Veteran reported an increase in low back pain in a VA treatment record. A subsequent June 2007 record reported that her pain could come and go depending on how much she worked on restoring her home. The Veteran was independent in her home exercise program, and TENS (transcutaneous electrical nerve stimulation) therapy helped with the management of her symptoms. Since early May, the Veteran had been in physical therapy for her back and neck complaints. The record stated that she had reached a plateau with her pain somewhat decreased, but not abolished. The Veteran was ready to be discharged with her home exercise program.

In January 2008, a record from Dr. L. stated that the Veteran's low back pain was a 9 out of 10. It traveled down both of her legs. The Veteran also suffered from tingling to the fingers; pain to the neck and shoulders; dizziness; and an inability to walk, eat, or drink anything for three days. However, it was also noted that she had chills and fever during this period. She received a diagnosis of neck pain with neuropathy.

A subsequent October 2008 VA treatment record noted that the Veteran's low back pain still radiated to both lower extremities. The assessment of low back pain with lumbar radiculopathy. In November 2008, a VA MRI of the lumbar spine documented an impression of severe bilateral facet arthropathy with secondary degenerative grade 1 to 2 spondylolisthesis of L4 on L5. There was also distortion and relatively severe narrowing of the neural foramen that did not result bilaterally along with mild central canal stenosis. At the L5-S1, there was bulging of the disc with moderate left facet arthropathy and secondary moderate to severe left foraminal stenosis.
Later in June 2009, the assessment was low back pain with lumbar radiculopathy. The Veteran planned to continue with conservative management of her symptoms. The Veteran was also issued a walking cane in June 2009 due to her low back pain. With the cane, she ambulated independently on flat surfaces and stairs.

The Veteran was provided with an additional VA examination to assess her lumbar spine disability on August 20, 2009. The Veteran had aching pain at her waistline that had a moderate intensity. It had a gradual onset, lasted for hours, and occurred daily. The pain still radiated to her bilateral legs, but it was noted to only do so three days a week.

The lumbar spine's active range of motion included 35 degrees of flexion, 15 degrees of extension, 25 degrees of lateral flexion bilaterally, and 25 degrees of lateral rotation bilaterally. There was no objective evidence of pain on active range motion or after repetitive range of motion testing. In addition, there were no further limitations after three repetitions of range of motion. The Veteran still had normal results for muscle strength testing with no atrophy or abnormality in muscle tone. She also maintained the previously noted normal results for sensory testing and the reflex examination. 

The Veteran's posture, head position, symmetry in appearance, and gait were still normal. The Veteran had been using her cane on an occasional basis since June 2009. She was now limited to walking 1 to 3 miles. There continued to be no ankylosis or abnormal spinal curvatures. In contrast to the March 2007 examination, the Veteran had no objective abnormalities of the thoracic sacrospinalis, including bilateral spasm, atrophy, guarding, pain with motion, tenderness, or weakness. The Lasegue's sign continued to be negative. The diagnosis was degenerative disc disease at the L4-5 and L5-S1 with stenosis and radiculopathy at the L5-S1. According to the examiner, the disability had a severe effect on chores, shopping, exercise, and sports. There was no effect in terms of recreation, traveling, feeding, bathing, dressing, toileting, and grooming.

In a September 2009 letter, Dr. T, a chiropractic physician, reported that an examination on August 22, 2009 revealed that the Veteran was unable to flex her lumbar spine to 30 degrees. She also had decreased and painful ranges of motion for all other planes. In addition, spondylolisthesis was noted on an x-ray with anterior slippage of the L4 on L5.

Based on the evidence from this period, the Board finds that the Veteran is not entitled to a disability rating in excess of 10 percent prior to March 2, 2007. The range of motion findings from the March 2006 VA examination showed that the Veteran had 90 degrees of flexion and 220 degrees of combined range of motion. Thus, her flexion was greater than 60 degrees and her combined range of motion was greater than 120 degrees. In addition, the Veteran was not found to have muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour. The March 2006 VA examiner specifically found that no muscle spasm was present. There was also no ankylosis or intervertebral disc syndrome documented during this period.

The Board also notes that a March 2006 VA x-ray documented degenerative arthritis. The Board has consequently considered whether an additional rating or higher rating is available based on degenerative arthritis of the spine under Diagnostic Code 5003. 38 C.F.R. § 4.71a. However, the record does not reflect that the Veteran experienced occasional incapacitating exacerbations of her lumbar spine symptoms. Accordingly, the evidence does not support a 20 percent for the service-connected lumbar spine disability under Diagnostic Code 5003. 38 C.F.R. § 4.71a. In addition, as limitation of motion of the lumbar spine has been considered under Diagnostic Code 5237, a separate rating under Diagnostic Code 5003 based on the same limitation of motion due to pain or flare ups would constitute pyramiding. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

The record additionally fails to reflect that the Veteran's pain due to a chronic lumbar strain caused functional loss greater than that contemplated by the 10 percent rating assigned. 38 C.F.R. §§ 4.40, 4.45; DeLuca, 8 Vet. App. at 206-07. During the March 2006 VA examination, there was no additional loss of motion due to repetitive use testing and the Veteran's objective evidence of pain began at 80 degrees of flexion with a combined range of motion of 175 degrees. These measurements are above the maximum values provided for by a 20 percent rating. Based on this evidence, the Board does not find that the Veteran's lumbar spine disability picture more nearly approximates a 20 percent rating under the General Rating Formula.

As a result, the preponderance of the evidence is against the assignment of a disability rating higher than 10 percent prior to March 2, 2007. Thus, the benefit of the doubt rule does not apply, and the claim is denied. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. At 53.

From March 2, 2007 to August 21, 2009, the Board finds that a 20 percent rating is warranted for chronic lumbar strain. Beginning on this date, the Veteran's flexion of the thoracolumbar spine was documented to be greater than 30 degrees, but not greater than 60 degrees. The Veteran had 45 degrees of flexion during the March 2, 2007 VA examination, and later had 35 degrees of flexion at the time of the August 2009 VA examination. These measurements meet the criteria for a 20 percent rating under Diagnostic Code 5237. 

However, a rating higher than 20 percent is not appropriate during this period. The record does not show that the forward flexion of the thoracolumbar spine was 30 degrees or less. In addition, no ankylosis was present during the March 2007 or August 2009 VA examinations. The March 2007 VA examiner also found that the Veteran did not have intervertebral disc syndrome, and no incapacitating episodes due to intervertebral disc syndromes were noted during this period. A rating higher than 20 percent is also not available under Diagnostic Code 5003. Moreover, as previously discussed, prohibitions against pyramiding prevent the assignment of a separate 10 percent rating based on limitation of motion under Diagnostic Code 5003. 38 C.F.R. § 4.14; Esteban, 6 Vet. App. at 261-62.

The Board has also considered whether factors including functional impairment and pain as addressed under 38 C.F.R. §§ 4.40 and 4.45 would warrant a higher rating for the Veteran's chronic lumbar strain. See DeLuca, 8 Vet. App. at 206-07. However, the March 2007 and August 2009 VA examinations documented that the initial range of motion measurements were not changed by considerations of objective evidence of pain or repetitive use testing. The Veteran also denied having flare ups during the March 2007 VA examination. As the record does not demonstrate that the Veteran's symptoms caused additional functional loss during this period, an increased rating on this basis is not for application.

Based on the foregoing, the Board finds that a disability rating of 20 percent, but no higher, is warranted for chronic lumbar strain from March 2, 2007 to August 21, 2009. 38 U.S.C.A. § 5107(b). 

From August 22, 2009 to September 30, 2009 the Board finds that a 40 percent rating should be awarded for the Veteran's chronic lumbar strain. Dr. T. reported that the Veteran demonstrated less than 30 degrees of flexion during an August 22, 2009 examination. The Board also finds it notable that the Veteran was documented to have 30 degrees of flexion approximately one month later in an October 2009 VA treatment record. Resolving all reasonable doubt in the Veteran's favor, the Board finds that the Veteran is entitled to a 40 percent disability rating for her chronic lumbar strain from August 22, 2009 to September 30, 2009. 38 U.S.C.A. § 5107(b).

However, there are no findings from this period to suggest that the Veteran experienced unfavorable ankylosis in the thoracolumbar spine to justify the award of a 50 percent rating. In addition, there is no indication that her limitation of motion was of such severity so as to more nearly approximate unfavorable ankylosis of the thoracolumbar spine. See DeLuca, 8 Vet. App. at 206-07. The evidence from this period also does not reflect that the Veteran had any incapacitating episodes due to intervertebral disc syndrome. In addition, Diagnostic Code 5003 does not provide for a rating in excess of 40 percent, and a separate rating under this Diagnostic Code predicated on limitation of motion is not permitted by the rating criteria. 38 C.F.R. § 4.14; Esteban, 6 Vet. App. at 261-62. Thus, there is no basis for a disability rating higher than 40 percent.

Chronic Lumbar Strain from October 1, 2009 to November 14, 2011

It is noted that effective October 1, 2009 a total rating based on individual unemployability has been assigned. As such changes in the rating for the back after that date could be effectuated without a change in the running award of compensation to the Veteran.

On October 1, 2009, a VA treatment record stated that the Veteran's low back pain was worsened by walking, standing, and bending in any direction. The pain was generally a 7 to 8 out of 10, and a 5 out of 10 at its best. During the visit, the Veteran ambulated without assistance. The lumbar spine was limited to 30 degrees of flexion due to pain. Pain was present upon bending and extension. The motor functioning for the lower extremities was a 5 out of 5 bilaterally. Sensory testing was also normal. Although the Veteran's deep tendon reflexes were normal in the bilateral knees, there was a hypoactive (1+) reflex in the ankles bilaterally. The Veteran was given a soft lumbar support to be worn with increased activity.

Later in October 2009, a VA treatment record stated that the Veteran's low back pain could limit her activity. With pain medication, the pain was a 5 out of 10. The Veteran was still using a cane, and she was treating her low back pain with a TENS unit. The Veteran's range of motion was within functional limits. Her strength was a now a 4 out of 5 (active movement against some resistance), but her sensory functioning remained intact. 

In January 2010, the Veteran reported constant low back pain that radiated down her legs. She also described a new left leg pain on the lateral side of her calf muscle. The pain was a 7 out of 10 in severity and noted to be aching, sharp, stabbing, and sometimes burning. The Veteran reported that the prolonged sitting could lead to pain. Ibuprofen, Tylenol, and TENS therapy provided moderate relief. The assessment was chronic low back pain, grade I spondylolisthesis of L4 over L5, lumbar degenerative disc disease at L4-5 and L5-S1, with right L5-S1 radiculopathy. The Veteran reported that she had been wearing the soft lumbar support from October 2009 more than usual. In July 2010, the Veteran reported having constant and aching low back pain that was an 8 out of 10 in severity. 
The Veteran also denied having urinary or fecal incontinence in July 2010. By January 2011, the Veteran complained of urinary incontinence for the last 5 to 6 years with a recent increase in leaking. She reported wearing mini pads. The Veteran also described having a small amount of bowel incontinence for the last 5 to 6 years.

The impression from a February 2011 VA MRI of the lumbar spine documented that there was moderate to severe multifactorial spinal stenosis at the L4-5 level due to osteophytes with bulging disc as well as facet joint prominence in the component of spondylolisthesis. Narrowing of the neural exit of the foramen was also present bilaterally. In addition, degenerative changes were found at the L4-5 with some narrowing of the neural exit foramina in the left greater than the right.

In March 2011, a VA treatment record documented the same symptoms that were present in January 2010. At this time, the Veteran's gait and lumbar flexion were noted to be within normal limits. The record stated that her lumbar extension and facet loading were mildly positive on the right. The Veteran's muscle strength was a 5 out of 5 bilaterally and symmetrically, except for the bilateral hip flexion measurement of a 4 out 5 with submaximal effort. Her knee and ankle reflexes were still normal, and the sensory functioning was intact to the touch bilaterally. The straight leg raising test was also within normal limits bilaterally. The Veteran was tender to palpation over the right sacroiliac joint. The assessment noted that the Veteran had chronic low back pain as well as right L5 radiculopathy. She presented with predominantly right facetogenic low back pain with right sacroiliac dysfunction more so than radicular symptoms. Another record from this month noted that the Veteran did not have claudication, and there were no bowel or bladder problems.

On November 8, 2011, a VA examination was conducted for the Veteran's lumbar spine disability. The Veteran now reported having daily flare ups that affected the function of the thoracolumbar spine. Range of motion testing showed that the Veteran had 90 degrees of forward flexion, 30 degrees of extension, 30 degrees of bilateral lateral flexion, and 30 degrees of bilateral lateral rotation. Objective evidence of pain was also observed at these measurements with the exception of left lateral rotation, where objective evidence of pain began at 25 degrees. The Veteran was unable to perform repetitive use testing with three repetitions as it was too painful. She also had additional functional loss and/or impairment in the form of less movement than normal, weakened movement, pain on movement, and slow and deliberate movement.

During muscle strength testing, the right hip flexion, knee extension, ankle plantar flexion, ankle dorsiflexion, and great toe extension were a 3 out of 5, representing active movement against gravity. The left hip flexion, knee extension, ankle plantar flexion, ankle dorsiflexion, and great toe extension were a 4 out of 5, signifying active movement against some resistance. She continued to have no muscle atrophy. The Veteran also had normal reflexes bilaterally in the knee and ankle. In addition, her sensory examination results were still normal. Upon palpation of the lumbar spine paraspinous muscles, tenderness was present. However, there was no guarding or muscle spasm. 

The examiner stated that the Veteran did not have intervertebral disc syndrome of the thoracolumbar spine. There was also no vertebral fracture. In terms of assistive devices, she still used a cane on an occasional basis. There was no functional impairment of an extremity such that no effective function remained other than that which would be equally well-served by an amputation with prosthesis. In addition, there were no scars related to the lumbar spine disability. The straight leg raising test was negative bilaterally, and the examiner stated that no radicular pain or any other signs or symptoms due to radiculopathy were present. The examiner additionally found that the Veteran did not have any other neurological abnormalities related to the lumbar spine, including bowel or bladder problems. The diagnosis was degenerative joint disease of the lumbar spine.

During a November 8, 2011 VA examination that assessed the Veteran's peripheral nerves, the examiner documented that she was diagnosed with lumbar and cervical radiculopathy. The Veteran reported that he experienced tingling and numbness in both of her arms up to the elbows. She also had pain her neck, shoulders, and arms. The Veteran further reported having weakness in the arms. In addition, the Veteran had leg pain bilaterally and weakness on the right. The examiner opined that the Veteran's lumbar spine stenosis may have been caused by a back strain or injury and likely led to her lumbar radiculopathies with shooting pain in both legs. However, the examiner explained that her hand symptoms were not due to lumbar strain as the lower spine does not control the function of the arms. The examiner added that the Veteran might have cervical radiculopathies that were due to her cervical spine disease.

After considering the evidence from this period, the Board does not find that a disability rating higher than 40 percent is warranted from October 1, 2009 to November 14, 2011. During this period, the record does not reflect that the Veteran experienced unfavorable ankylosis of the thoracolumbar spine. In addition, the November 8, 2011 VA examiner found that there was no intervertebral disc syndrome of the thoracolumbar spine.

The Board notes that the August 2014 VA examiner opined that the degenerative joint disease diagnosed during the November 8, 2011 VA examination was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner stated that the deterioration associated with degenerative joint disease is primarily caused by the natural ageing process, but it can be accelerated by factors such as diabetes, obesity, congenital disorders, or injury. It is unclear from this opinion whether the Veteran's degenerative joint disease is associated with her service-connected lumbar strain. However, the examiner opined that she was unable to state without resort to mere speculation which of the Veteran's symptoms were attributable to each condition due to the complexity and integrated nature of the body, as well as the tendency for back symptoms to overlap. Moreover, even if the Board were to afford the Veteran the benefit of the doubt that her degenerative arthritis is associated with her chronic lumbar strain, she would not be entitled to a higher rating on this basis. Diagnostic Code 5003 has a maximum rating of 20 percent. In addition, a separate rating for limitation of motion under Diagnostic Code 5003 would cause pyramiding. 38 C.F.R. § 4.14; Esteban, 6 Vet. App. at 261-62.

The Board has also considered the provisions of 38 C.F.R. §§ 4.40, 4.45, 4.49, and the holdings in DeLuca. However, the Board finds that the Veteran's symptoms do not constitute the functional equivalent of unfavorable ankylosis of the entire thoracolumbar spine. The Veteran had no additional functional loss and/or impairment during the November 8, 2011 VA examination. Although the Veteran reported flare ups, she did not describe symptoms that were comparable to ankylosis.

In light of this evidence, there is no basis for the assignment of a disability rating in excess of 40 percent for chronic lumbar strain from October 1, 2009 to November 14, 2011. As such, the benefit of the doubt doctrine does not apply, and the claim is denied. 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. at 53.

Chronic Lumbar Strain from November 15, 2011 to August 3, 2014

In a November 15, 2011 addendum opinion, the examiner that conducted the November 8, 2011 VA examination stated that the Veteran's current complaints and physical evaluation were related to her service-connected chronic lumbar spine strain.

In a December 2011 VA treatment record, the Veteran reported having significant difficulty with her lumbar range of motion secondary to pain. The pain was focused on the right side of the lumbar spine with associated paresthesias that radiated down the bilateral lower extremities on the right more than the left. Her strength was a 3 out of 5 for the bilateral lower extremities secondary to poor effort. However, the Veteran fully ambulated with a cane and was able to have stability with ambulation. Her muscle tone, and reflexes were still normal. There continued to be no muscle atrophy. The record noted that she had significant limitation of the lumbar flexion, extension, and rotation with an inability to move past the neutral range of motion in all planes. The Veteran had a similar inability to perform range of motion testing for the cervical spine, but she was noted to have full cervical flexion upon leaving the clinic. Her muscle strength testing for the bilateral lower extremities was also a 3 out of 5 during this visit, but the examiner stated that this result was secondary to poor effort. She was able to fully ambulate with a straight cane and have stability with ambulation. 

The assessment was multifactorial chronic low back pain that was noted to be facetogenic and myofascial pain with sacroiliac joint dysfunction and possible radicular symptoms.

In a July 2012 VA treatment record, the Veteran reported constant and sharp pain in her low back and legs that had been present for 6 to 7 months. Another record from this month noted that the Veteran had "urge incontinence," needing to change pads 7 to 8 times a day. The Veteran was later seen for a consult regarding incontinence and prolapse in September 2012. The record stated that she first noticed a problem 2 years before the visit. She reportedly leaked urine all day long and changed a pad 5 to 6 times a day. She was unsure if the leaking occurred at night. The assessment was urinary incontinence, pelvic organ prolapse, cystocele, and rectocele. In November 2012, a VA treatment record reported that the Veteran's "urge incontinence /vaginal prolapse" had improved.

In March 2014, a VA treatment did not find any problems related to the Veteran's sensory functioning, strength, muscle tone, or reflexes. The Veteran still used a cane. The record reported that the Veteran did not have any bowel or bladder dysfunction. The assessment was chronic pain and multiple tender points with suspected fibromyalgia. 

After reviewing the evidence of record, the Board does not find that a disability rating higher than 10 percent is appropriate during this period. There are no range of motion measurements from this period to indicate that the forward flexion of the spine was 60 degrees or less, or that the combined range of motion was 120 degrees or less. Only a few days before this appeal period began on November 15, 2011, the November 8, 2011 VA examination report documented that that the Veteran had a normal forward flexion of 90 degrees and combined range of motion of 240 degrees. Although the Veteran was noted to be unable to perform range of motion testing in December 2011, the examining doctor appeared to question the validity of the most of the test results from this visit. In addition, the Veteran was able to perform range of motion testing during a subsequent August 2014 VA examination. Thus, the Board does not find that this record provides probative evidence that the Veteran's range of motion during this period was limited to a degree contemplated by a rating higher than 10 percent. In addition, there is no report from this period that the Veteran had muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

There is also no indication from the record that the Veteran had incapacitating episodes due to intervertebral disc syndrome. Furthermore, the evidence does not reflect that the Veteran had occasional incapacitating exacerbations with x-ray evidence of arthritis involving two or more major joints or two or more minor joint groups. A separate 10 percent rating under Diagnostic Code 5003 is also impermissible due to the fact that limitation of motion is contemplated by the 40 percent rating under Diagnostic Code 5237. 38 C.F.R. § 4.14; Esteban, 6 Vet. App. at 261-62.

The Board has also considered the factors set forth in DeLuca and 38 C.F.R. §§ 4.40, 4.45, and 4.59. As the evidence from this period fails to show that the Veteran satisfied the criteria for even the minimum compensable rating under Diagnostic Code 5237, the Board finds that her functional loss has already been considered in the assignment of the 10 percent rating. Moreover, there is insufficient evidence from November 15, 2011 to August 3, 2014 to demonstrate the Veteran experienced additional functional loss or impairment to warrant a rating higher than 10 percent.

Thus, the Board does not find that a disability rating in excess of 10 percent is warranted from November 15, 2011 to August 3, 2014. As the preponderance of the evidence is against the Veteran's claim, the benefit of the doubt provision does not apply. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. at 53. 

Chronic Lumbar Strain on and after August 4, 2014

On August 4, 2014, a VA examination for the Veteran's lumbar spine disability took place. The Veteran informed the examiner that her daily back pain was generally a 7 out of 10 in severity. She also reported having flare ups related to her lumbar spine disability. During such an event, her back pain would increase to a 10 out of 10 and last all day. The Veteran needed to rest until her symptoms subsided. She still used a cane, but she now regularly used this assistive device for most of each day.

Range of motion testing demonstrated that the Veteran had 40 degrees of forward flexion, 15 degrees of extension, 20 degrees of bilateral lateral flexion, 30 degrees of right lateral rotation, and 20 degrees of left lateral rotation. There was objective evidence of pain at these endpoints with the exception of right lateral rotation, where there was no objective evidence of painful motion. The Veteran had additional limitation in range of motion following repetitive use testing, with 20 degrees of forward flexion, 10 degrees of extension, 10 degrees of bilateral lateral flexion, and 10 degrees of bilateral lateral rotation. She also experienced functional loss/impairment that was manifested by less movement than normal, pain on movement, and interference with sitting, standing, and/or weight-bearing.

The results of muscle strength testing for the hip flexion, knee extension, ankle plantar flexion, and ankle dorsiflexion were a 4 out of 5, representing active movement against some resistance. There continued to be no muscle atrophy. The Veteran's reflexes and sensory functioning were still normal in response to testing. Palpation to the area of the lumbar 3, 4, and 5 produced muscle tightness. There was also point tenderness at the lower lumbar spine. The examiner additionally determined that the Veteran had a muscle spasm of the thoracolumbar spine that resulted in an abnormal gait or spinal contour. Although guarding was present, it did not result in an abnormal gait or spinal contour. There was also no ankylosis of the spine. 

In addition, the examiner stated that the Veteran did not have any other neurologic abnormalities or findings that were related to a thoracolumbar spine condition, including bowel or bladder problems and/or pathologic reflexes. The straight leg raising test was positive bilaterally. There was no thoracic vertebral fracture with the loss of 50 percent or more of the height. According to the examiner, the Veteran did have intervertebral disc syndrome of the thoracolumbar spine. However, the Veteran had not experienced any incapacitating episodes over the past 12 months due to intervertebral disc syndrome. The examiner also noted that imaging studies of the thoracolumbar spine documented the presence of arthritis. The diagnoses for the thoracolumbar spine were lumbosacral strain and degenerative arthritis of the spine. 

In a Mach 2015 VA treatment record, it was noted that the Veteran still used a cane and wore a low back belt she had received from VA. The Board notes that this assistive device appears to be the same soft lumbar support that the Veteran received in October 2009. A subsequent April 2015 VA treatment record noted the Veteran's statement that Aleve gel worked best for her symptoms, and she was not interested in receiving an epidural steroid injection. In November 2015, the Veteran reported pain in the low back, upper back, shoulder, and hips that was a 10 out of 10. The record later noted that her major complaint was left shoulder pain. 

After reviewing the evidence of record, the Board finds that a rating higher than 40 percent for chronic lumbar strain on and after August 4, 2014 is not warranted. The August 2014 VA examiner found that the Veteran did not have ankylosis, and there were no reports that ankylosis was present in the other available evidence from this period. In addition, although the August 2014 VA examiner found that the Veteran had intervertebral disc syndrome of the thoracolumbar spine, no related incapacitating episodes had occurred over the past 12 months. Thus, a higher rating under Diagnostic Code 5243 is also not for application. The Board is also unable to award a rating higher than 40 percent under Diagnostic Code 5003, and a separate rating for the Veteran's limitation of motion under this Diagnostic Code would represent impermissible pyramiding. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

Even after considering the Veteran's functional limitations due to less movement than normal, pain on movement, and interference with sitting, standing, and/or weight-bearing, the Board does not find that her chronic lumbar strain symptoms more nearly approximated unfavorable ankylosis of the entire thoracolumbar spine to warrant a 40 percent evaluation under Diagnostic Code 5237. 38 C.F.R. §§ 4.40, 4.45; DeLuca, 8 Vet. App. at 206-07.

Based on the foregoing, the award of a rating higher than 40 percent for chronic lumbar strain on and after August 4, 2014 is not appropriate. In reaching this conclusion, the Board has considered the benefit of the doubt doctrine. However, that doctrine is not applicable based on these facts. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. at 53.

For the each of the periods on appeal, the Board has considered whether a separate rating is warranted for any objective neurologic abnormalities associated with the service-connected chronic lumbar strain. As noted above, the Veteran is already in receipt of separate disability ratings for the radiculopathy the right and left lower extremities. Although radiculopathy involving the upper bilateral extremities was also reported in the November 2011 VA examination, the examiner explained that that these disorders were unrelated to the lumbar spine disability. The Board also acknowledges that bowel and bladder impairments have been noted at different points beginning in February 2006. While the March 2007 VA examiner indicated that these symptoms were related to the lumbar spine disability, the majority of the available evidence reflects that the Veteran did not have a bowel or bladder impairment that was a manifestation of her lumbar spine disability. Both the November 2011 and August 2014 VA examiners determined that there was no impairment of this nature that was associated with the lumbar spine disability. VA treatment records from July and November of 2012 also indicated that the Veteran's urge incontinence was related to the prolapse of a pelvic organ. In light of this evidence, the Board does not find that a separate rating is not warranted for a bowel or bladder impairment.

The Board has also evaluated the evidence from each of the appeal periods in consideration of the provisions of 38 C.F.R. § 3.321(b)(1). However, in this case, the record does not show that the Veteran's lumbar spine disability is exceptional or unusual to a degree that would warrant the assignment of a higher rating on an extraschedular basis. See 38 C.F.R. § 3.321(b)(1). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available scheduler evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). Making this determination requires a comparison between the level of severity and symptomatology of the claimant's service connection disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and no extraschedular referral is required as the assigned scheduler evaluation is adequate. See id.; see also VAOGCPREC 6-96 (Aug. 16, 1996). In the alternative, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found to be inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provide by the extraschedular regulation (38 C.F.R. § 3.321(b)(1)) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

The evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected lumbar spine disability is inadequate. A comparison between the level of severity and symptomatology of the Veteran's assigned rating with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. The Veteran's chief complaints of pain and functional loss are fully considered in the assignment of the staged disability ratings. Moreover, there are higher ratings available under the diagnostic codes for various symptoms of the disorder, but the Veteran's disability is not productive of such manifestations. For all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011). For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. Given the variety of ways in which the rating schedule contemplates functional loss for musculoskeletal disabilities, the Board finds that the schedular criteria reasonably describe the Veteran's disability picture in this case.

Finally, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected symptoms that have not been attributed to a specific service-connected disability. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

Based on the foregoing, the Board finds that the requirements for an extraschedular evaluation for the Veteran's service-connected lumbar spine disability under the provisions of 38 C.F.R. 3.321(b)(1) have not been met. Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995); Thun v. Peake, 22 Vet. App 111 (2008).

 (CONTINUED ON NEXT PAGE)

ORDER

Prior to March 2, 2007, a disability rating in excess of 10 percent for chronic lumbar strain is denied.

From March 2, 2007 to August 21, 2009, a 20 percent disability rating for chronic lumbar strain is granted, subject to the law and regulations governing the award of monetary benefits.

From August 22, 2009 to September 30, 2009, a 40 percent disability rating for chronic lumbar strain is granted, subject to the law and regulations governing the award of monetary benefits.

From October 1, 2009 to November 14, 2011, a disability rating in excess of 40 percent is denied.

From November 15, 2011 to August 3, 2014, a disability rating in excess of 10 percent for chronic lumbar strain is denied.

On and after August 4, 2014, a disability rating in excess of 40 percent for chronic lumbar strain is denied.

______________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs